```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


MITCHELL R. HOLMES and
PATRICIA A. HOLMES,

          Plaintiffs,

v.                                    Civil Action No. 5:11CV123
                                                        (STAMP)
CHESAPEAKE APPALACHIA, LLC,
CHESAPEAKE ENERGY CORP.,
CHESAPEAKE OPERATING INC.,
NOMAC DRILLING, LLC,
BRONCO DRILLING COMPANY, INC.,
GREAT LAKES ENERGY PARTNERS, LLC,
n/k/a RANGE RESOURCES-APPALACHIA, LLC,
and BRENDA ANN MILLER,

          Defendants.
```

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION TO REMAND, GRANTING DEFENDANT BRENDA ANN MILLER'S MOTION TO DISMISS, GRANTING DEFENDANTS CHESAPEAKE APPALACHIA, LLC, NOMAC DRILLING, LLC, AND BRONCO DRILLING COMPANY, INC.'S MOTION TO COMPEL ARBITRATION, AND SUBMITTING THIS ACTION TO ARBITRATION

## I.  Procedural History

The plaintiffs, Mitchell and Patricia Holmes, filed this civil action in the Circuit Court of Ohio County, seeking a declaratory judgment with regard to the rights and obligations of the plaintiffs, defendants Chesapeake Appalachia, LLC ("Chesapeake Appalachia"), Chesapeake Energy Corp. ("Chesapeake Energy"), Chesapeake Operating, Inc. ("Chesapeake Operating"), and Great Lakes Energy Partners, LLC, n/k/a Range Resources-Appalachia, LLC ("Range") under two oil and gas leases, as well as an Order of Payment associated with one of the leases.  The complaint also asserts related claims of slander of title, the tort of outrage,

and civil conspiracy against all defendants, and a claim of trespass against defendants Nomac Drilling, LLC ("Nomac"), Bronco Drilling Company, Inc. ("Bronco") and Chesapeake Appalachia.

The defendants removed this matter to this Court, claiming removal jurisdiction based upon complete diversity under 28 U.S.C. §§ 1332 and 1446. In support of this contention, the defendants assert that, although plaintiffs and defendant Brenda Miller ("Miller") are both residents of West Virginia, defendant Miller was fraudulently joined to this action, and thus her residency should be disregarded for purposes of determining whether complete diversity exists between the parties. Following removal, the plaintiffs filed a motion to strike and dismiss the notice of removal, and a motion to remand this action to the Circuit Court of Ohio County, arguing that the notice of removal was improperly filed and that defendant Miller was not fraudulently joined. This motion is now fully briefed and ripe for determination by this Court. For the reasons that follow, this Court agrees with the defendants that the notice of removal should not be stricken, and that defendant Brenda Miller was fraudulently joined to this action. Accordingly, plaintiffs' motion to remand is denied.

Also pending before this Court are defendant Range's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6); defendant Brenda Ann Miller's motion to dismiss pursuant to Rule 12(b)(6); Chesapeake Operating and Chesapeake Energy's motion to dismiss under Rule 12(b)(6); and defendants Chesapeake Appalachia,

Bronco and Nomac's motion to compel arbitration and dismiss under Rule 12(b)(6); which have all been fully briefed.  For the following reasons, this Court will grant defendant Miller's motion to dismiss, grant Chesapeake Appalachia, Bronco and Nomac's motion to compel arbitration, and finding that, as a result, it is necessary to send all claims against all remaining defendants to arbitration, deny all other motions to dismiss as moot.

II.  <u>Facts</u>[1]

On or about March 7, 2006, the plaintiffs entered into an Oil, Gas, and Coalbed Methane Gas Lease with what is now defendant Range ("Base Lease"), leasing oil and gas rights for their approximately 60 acre tract of land in Ohio County, West Virginia ("leasehold property").  The primary term of the Base Lease was five years, and the lease was filed in the Office of the Clerk of the Ohio County Commission of Ohio County, West Virginia on May 19, 2006.  On or about December 7, 2010, the plaintiffs entered into an Oil and Gas Lease with defendant Chesapeake Appalachia, leasing oil and gas rights to the leasehold property to defendant Chesapeake Appalachia ("Top Lease").  The effective date of the Top Lease was March 7, 2011, and it too had a primary term of five years.

On July 1, 2010, defendant Range assigned the Base Lease to Chesapeake Appalachia and Statoil USA Onshore Properties, Inc.  On December 16, 2010, a Declaration of Notice of Pooled Unit was filed

---

[1]For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by the plaintiffs in their complaint.

in the Office of the Ohio County Clerk for the "Esther Weeks Unit," to be operated by Chesapeake Appalachia.  (ECF No. 3 Ex. 2 *1) This pooled unit included the leasehold property which was, at the time, still subject to the now assigned Base Lease.  According to the terms of the Base Lease, because the plaintiffs' property was part of a pooled unit prior to the expiration of the primary term, the Base Lease did not expire at the conclusion of the five-year primary term, but instead continued year-to-year, "for so long as oil, gas and/or coalbed methane or other liquid hydrocarbons are produced in paying quantities from the Leased Premises. . ." (ECF No. 3 Ex. 1 *1.1)

Pursuant to an Order of Payment executed on the Top Lease, which required that the Base Lease first be released of record before payment became due, defendant Chesapeake tendered a bonus check to the plaintiffs in the amount of $299,990.00 on March 22, 2011.  (See ECF No. 3 Ex. 1 *38)  However, when the plaintiffs deposited the check, they were informed by their banking institution that defendant Chesapeake Operating or others acting on their behalf had issued a "stop payment" order on the check. Following a demand by plaintiffs' counsel for payment pursuant to the Order of Payment, on the basis that payment was complete "upon mailing or dispatch," Chesapeake Energy and/or Chesapeake Appalachia terminated the Top Lease by Release of Oil and Gas Lease, filed with the Office of the Ohio County Clerk on April 20, 2011.  (See ECF No. 3 Ex. 2 *22)  The plaintiffs assert that they did not receive ten dollars or any other good and valuable

4

consideration in order to release the oil and gas rights subject to the Top Lease, as is stated in the release.  (Id.)

The plaintiffs now seek declaratory judgment as to the validity of the Top Lease, of the Release of Oil and Gas Lease, and of the Base Lease.  They contend that Chesapeake Appalachia acted in bad faith in extending the Base Lease, which it held following the assignment by defendant Range, knowing that it had executed the Top Lease with the plaintiffs less than two weeks prior to the filing of the Declaration of Pooled Unit.  Further, they seek a court order stating that the Base Lease is invalid because it was improperly notarized by defendant Brenda Miller in Pennsylvania, when the plaintiffs assert that the Base Lease was finalized in West Virginia, and that they never traveled to Pennsylvania for purposes of execution of the lease and could not have been present at the time of the notarization.  They claim that, with the Base Lease invalidated, the Top Lease must be valid, and that they are owed payment pursuant to that lease as a result.

The plaintiffs also claim that the Release of Oil and Gas Lease executed by Chesapeake Appalachia is invalid because they never received the consideration claimed to support the release. The plaintiffs further assert that defendants Bronco and Nomac, as subsidiary drillers and subcontractors of Chesapeake Appalachia, continue to engage in drilling on the leasehold property pursuant to the claimed invalid Base Lease, and are thus committing trespass.  Finally, the plaintiffs allege that the actions of all of the defendants collectively have amounted to slander of title to

the leasehold property, and the tort of outrage, or intentional infliction of emotional distress.  The plaintiffs also maintain the defendants' actions constitute a civil conspiracy to deprive them of their sign-on bonus and royalties for the leasehold property.

### III.  Applicable Law

A.  Motion to Remand

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter.  28 U.S.C. § 1441.  Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331 and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a).  The party seeking removal bears the burden of establishing federal jurisdiction.  See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).  Removal jurisdiction is strictly construed due to "significant federalism concerns," implicated by abrogating a state court of the ability to decide a case over which it has jurisdiction.  Id.  Thus, if federal jurisdiction is doubtful, the federal court must remand.  Id.

However, when a defendant removes a case that, on its face, does not present complete diversity, courts are permitted to utilize the doctrine of fraudulent joinder to examine the record in more depth to determine whether the non-diverse parties are real parties in interest to the action.  Mayes v. Rapoport, 198 F.3d

6

457, 461 (4th Cir. 1999).   Under the doctrine of fraudulent joinder, a defendant may remove a case on the basis of diversity jurisdiction even if a non-diverse defendant is a party to the case, so long as the removing party can prove that the non-diverse defendant was fraudulently joined to the action.   <u>Id.</u>  Fraudulent joinder "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."   <u>Id.</u>

B.  <u>Motion to Compel Arbitration</u>

The Federal Arbitration Act ("FAA") applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . ."  9 U.S.C. § 2.  When a party seeks enforcement of the arbitration clause of an agreement during proceedings in a district court, a party sufficiently "invoke[s] the full spectrum of remedies under the [Federal Arbitration Act, 9 U.S.C. § 1 <u>et seq.</u>("FAA")]."  <u>Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.</u>, 252 F.3d 707, 710 (4th Cir. 2001).

In order to compel arbitration under the FAA, the law of the United States Court of Appeals for the Fourth Circuit provides that a moving party must "demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the

7

agreement, to interstate or foreign commerce, and (4) failure, neglect, or refusal of the [opposing party] to arbitrate the dispute." <u>Adkins v. Labor Ready, Inc.</u>, 303 F.3d 496, 500-01 (4th Cir. 2002) (citing <u>Whiteside v. Teltech Corp.</u>, 940 F.2d 99, 102 (4th Cir. 1991).   Further, while federal law determines the arbitrability of issues, "[w]hether a party agreed to arbitrate a particular dispute is a question of state law governing contract formation." <u>Id.</u> at 501 (citing <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995)).

Federal policy generally takes a liberal stance in favor of enforcement of contractual arbitration clauses. <u>See</u> <u>Adkins</u>, 303 F.3d at 500.   When determining whether an issue is arbitrable pursuant to a contractual provision, courts are required to "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" <u>Hill v. PeopleSoft USA, Inc.</u>, 412 F.3d 540, 543 (4th Cir. 2005) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983)).

C.   <u>Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon which relief can be granted" as a motion in response to a plaintiff's complaint before filing a responsive pleading.

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true. <u>Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.</u>, 910 F.2d 139, 143 (4th Cir. 1990).

8

Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" <u>Id.</u> at 143-44 (quoting <u>Johnson v. Mueller</u>, 415 F.2d 354, 355 (4th Cir. 1969)); <u>see also</u> <u>Rogers v. Jefferson-Pilot Life Ins. Co.</u>, 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957). Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief with "more than labels and conclusions . . . factual allegations must be enough to raise a right to relief above the speculative level." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007).

IV.   <u>Discussion</u>

A.   <u>Motion to Strike and Dismiss Defendants' Notice of Removal and to Remand</u>

As an initial matter, the plaintiffs have moved this Court to strike and dismiss the defendants' notice of removal. In support of this motion, the plaintiffs assert that the defendants have improperly averred in their notice of removal that defendant Miller joined in the removal, when they also argue that defendant Miller was not properly served, and when counsel for defendant Miller did not sign the notice of removal.

The defendants, with the exception of defendant Miller, responded, arguing that the motion to strike and dismiss the notice of removal and to remand is improper both procedurally and on the merits.  First, they argue that the only procedural vehicle by which the Court may strike a filing is through Federal Rule of Civil Procedure 12(f), and this rule only allows the Court to strike "from a <u>pleading</u> any insufficient defense or redundant, immaterial, impertinent, or scandalous matter." (emphasis added). The defendants maintain that a notice of removal is not a "pleading" under the rules, and that the only response to a notice of removal allowed by the rules or by Title 28 of the United States Code is a motion to remand.  This Court agrees.  As the notice of removal is not a "pleading"[2] under the rules, this Court lacks the power to strike it under Federal Rule of Civil Procedure 12(f).

Further, inasmuch as the plaintiffs' motion to strike could be construed as a motion to remand for violation of the removal procedure under 28 U.S.C. § 1446, this Court must deny this motion on the merits as well.  Initially, § 1446 only requires that "all defendants who have been properly joined and served" join or consent to removal.  It appears from the filings, that defendant Miller was not personally served until October 5, 2011.  This case

---

[2]Federal Rule of Civil Procedure 7(a) lists the only "pleadings" allowed under the federal rules.  These are: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."

was removed to this Court on September 13, 2011. Accordingly, defendant Miller was not properly served at that time of removal, thus her consent to the same was not required. Finally, the defendants acknowledge their mistake in indicating on their notice of removal that defendant Miller joined in removal. However, they also point out that, throughout the notice, they take note multiple times that defendant Miller has not been properly served, and thus does not join in the notice. It is clear to this Court that any indication that defendant Miller joined in the notice of removal was inadvertent on the part of the defendants and was not intended to deliberately mislead the plaintiffs or this Court. As this Court finds no prejudice to the plaintiffs, this Court, or defendant Miller in this error, this Court declines to dismiss the defendants' notice of removal on this basis.

B.   <u>Motion to Remand</u>

The plaintiffs also filed a separate motion to remand. Before this Court is able to determine whether any issues in this case are arbitrable, or whether the plaintiffs have successfully alleged any claims against any of the named defendants, this Court must determine whether removal of this action was proper. <u>See</u> <u>Vaden v. Discover Bank</u>, 556 U.S. 49, 58 (2009) ("[A] party seeking to compel arbitration may gain a federal court's assistance only if, 'save for' the agreement, the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court.") (internal citations omitted); <u>Vt. Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 778-79 (2000)

11

(abrogated on different grounds) ("Questions of jurisdiction, of course, should be given priority--since if there is no jurisdiction, there is no authority to sit in judgment of anything else."). In their notice of removal, the defendants argued that this Court has jurisdiction because defendant Miller, who, along with the plaintiffs is a resident of West Virginia, was fraudulently joined in this action.

To establish fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original). A claim of fraudulent joinder places a heavy burden on the defendants. Marshall, 6 F.3d at 232. "[T]he defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor. A claim need not ultimately succeed to defeat removal; only a possibility of right to relief need be asserted." Id. at 232-33 (internal citations omitted). Further, the burden is on the defendants to establish fraudulent joinder by clear and convincing evidence. Rinehart v. Consolidated Coal Co., 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987).

However, when fraudulent joinder is alleged, a court is permitted to examine the entire record by any means available in

12

order to determine the legitimacy of the claim against the challenged party, including taking into consideration any affidavits submitted by the parties. Id. and Boss v. Nissan N. Am., 228 F. App'x 331, 336 (4th Cir. 2007) (unpublished).

Here, the defendants do not allege outright fraud in the plaintiffs' pleadings. Instead, the defendants argue that the plaintiffs simply do not assert a claim against Ms. Miller. Therefore, to defeat the plaintiffs' motion to remand, the defendants must establish by clear and convincing evidence that, even resolving all issues of fact and law in the plaintiffs' favor, the plaintiffs have not alleged any possible claim against defendant Miller. The defendants have met this burden.

The plaintiffs have alleged that defendant Miller improperly notarized the Base Lease in Pennsylvania when they were not present. In support of their motion to remand, the plaintiffs argue that defendant Miller is not fraudulently joined to this action because it is impossible to determine, without discovery, the extent of her relationship with defendant Range, her involvement with the execution of the Base Lease, and/or whether the plaintiffs were injured by her actions. They focus on the heavy burden necessary for the defendants to show fraudulent joinder and insist that, because defendant Miller's actions with regard to the notarization of the Base Lease may have violated West Virginia law concerning notary misconduct, the defendants cannot carry their burden of showing that there is no possibility of

13

liability on defendant Miller's part.  <u>See</u> W. Va. Code § 29C-6-101; <u>Marshall</u>, 6 F.3d at 232-33.

In response, the defendants[3] assert that they have met their burden of proving that defendant Miller was fraudulently joined in this action.  The defendants state that claims one, two and three all seek determinations in contract with regard to the validity of contracts to which defendant Miller is not, and has never been, a party.  Claim four, they assert, is only alleged against Chesapeake Appalachia, and defendants Nomac and Bronco.[4]  Finally, they argue that, in addition to the plaintiffs' failure to allege conduct on defendant Miller's part that could lead to liability under the theories of slander of title, the tort of outrage, or civil conspiracy (claims five, six and seven), the plaintiffs are foreclosed from bringing any of these causes of action against defendant Miller by the applicable two-year statute of limitations. This Court addresses each of these issues in turn.

Claims one, two and three raised in the plaintiffs' complaint all seek this Court's declaration regarding the rights and responsibilities owed under the Base and Top Leases, as well as the Order of Payment under the Top Lease, and the Release of the Top Lease.  As stated above, the defendants argue that the plaintiffs

---

[3]All defendants to this action filed a joint response to the plaintiffs' motion to remand.

[4]The plaintiffs have not contested this argument, and it appears clear from the face of the complaint that the plaintiffs have not raised claim four against defendant Miller.  Accordingly, this Court will not address whether claim four could lead to liability for defendant Miller.

have fraudulently joined defendant Miller to these claims because she is not a party to any of these agreements.  This Court agrees.

In order to assert a declaratory judgment action against a defendant, that defendant must be sufficiently "interested" in the subject matter of the action.  28 U.S.C. § 2201(a).  For the reasons asserted below, because defendant Miller is not a party to the contracts which are the subjects of the declaratory judgment actions raised in claims one, two and three, she is not sufficiently "interested" in the claims to allow the plaintiffs to assert declaratory judgment claims against her.

It is well established that, as a general matter, non-parties to contracts cannot be held to possess rights or responsibilities thereunder.  See EEOC v. Waffle House, Inc., 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty.").  In their response to the defendants' contention that defendant Miller is not a proper defendant to these claims of relief, the plaintiffs assert that defendant Miller's actions in notarizing the Base Lease "are instrumental in determining the rights of the parties and the full extent of Plaintiffs' causes of action." (ECF No. 32 *10)

While it is possible that the proof of plaintiffs' claims regarding the validity of the leases may require a determination of whether or not defendant Miller's notarization of the Base Lease was valid, this does not make her a valid defendant to these declaratory judgment claims.  None of the contracts which are the bases for the declaratory judgment claims create any rights or

15

responsibilities on the part of defendant Miller.  No matter how this or any court rules on any of these three claims, those rulings could only impact the rights and responsibilities of the plaintiffs, defendant Chesapeake Appalachia, and defendant Range, as they are the only parties to this case which have any rights or responsibilities under these contracts.  It may turn out that defendant Miller will be a witness in determining the validity of these contracts and that an ultimate decision as to these claims could turn on her actions with regard to the Base Lease.  However, as she is not a party to any of these contracts, she is an improper party to claims seeking a determination as to their validity.

So too are the plaintiffs wholly barred from recovery against defendant Miller under claim five, an allegation of slander of title, claim six, which asserts the tort of outrage, and claim seven, an allegation of civil conspiracy based upon the tortious wrongdoing asserted in the previous claims.  The only claim of misconduct against defendant Miller stems from her notarization of the Base Lease on March 7, 2006.  Accordingly, when the plaintiffs filed the instant action in the Circuit Court of Ohio County on August 19, 2011, more than five years had passed since defendant Miller's alleged wrongdoing.  As the defendants contend, the statute of limitations has run as to defendant Miller on all of these tort claims.

In West Virginia, the applicable statute of limitations for tort claims for bodily injury or property damage not subject to a specifically prescribed statute of limitations, is two years "after

16

the right to bring the same shall have accrued." W. Va. Code
§ 55-2-12(b). Initially, the tort of outrage carries no specific
statute of limitations outside of this "catch all" provision
contained in § 55-2-12(b), and thus is governed by the statute of
limitation of two years. <u>See</u> <u>Travis v. Alcon Lab. Inc.</u>, 202 W. Va.
369, 382 (1999). Further, while the West Virginia Supreme Court of
Appeals has not directly commented on the matter, this Court
believes that, if faced with the question, the West Virginia high
court would hold that slander of title is governed by the two-year
statute of limitations under § 55-2-12 as well.

In establishing the tort of slander of title, the West
Virginia Supreme Court held that the cause of action required an
injury of "diminished [property] value in the eyes of third
parties." <u>TXO Production Corp. v. Alliance Res. Corp.</u>, 187 W. Va.
457, 466 (1992). The West Virginia Supreme Court has found that an
injury to the right to conduct business is an injury to a property
right, and is governed by the two-year statute of limitations for
torts seeking recovery for property damage. <u>Garrison v. Herbert J.</u>
<u>Thomas Mem'l Hosp. Ass'n</u>, 190 W. Va. 214, 221 (1993). Further,
determining the applicability of a statute of limitations to a
cause of action, the West Virginia high court focuses on "the type
of interest which is allegedly harmed." <u>Garrison</u>, 190 W. Va. at
221. Thus, based upon the required injury to perceived property
value under slander of title, the § 55-2-12 two-year statute is
most applicable. Finally, since the tort of civil conspiracy is
not a stand-alone tort in West Virginia, the statute of limitations

17

of the underlying tortuous activity; here two years, controls. <u>See</u> <u>Dunn v. Rockwell</u>, 225 W. Va. 43, 57 (2009).

The plaintiffs raise two arguments against the application of the statute of limitations enumerated in West Virginia Code § 55-2-12(b).   First, they argue that, because their complaint contains issues regarding contract disputes, the tort claims in the complaint should be given the ten-year statute of limitations applicable to contract disputes in West Virginia.   W. Va. Code § 55-2-6.   In support of this contention, they cite to the West Virginia Supreme Court's position that "a complaint that could be construed as being either in tort or contract will be presumed to be in contract whenever the action would be barred by the statute of limitation if construed as being in tort." <u>Smith v. Stacy</u>, 198 W. Va. 498, 503 (1996).   However, the plaintiffs fail to acknowledge the fact that the <u>Smith</u> decision was interpreting the statute of limitations for a legal malpractice case.   The cause of action for legal malpractice in West Virginia is a hybrid action, and "may be brought in contract or in tort." <u>Id.</u> at 502 (internal citations omitted).   The torts of slander of title, outrage, and as a result, civil conspiracy in this case, are not such potentially hybrid actions.   Simply because part of the plaintiffs' complaint sounds in contract does not mean that the entirety of that complaint becomes a contract action.   Accordingly, this contention of the plaintiffs is without merit.

Further, the plaintiffs argue that the discovery rule tolls the statute of limitations in this case to March 2011, when the

18

Chesapeake defendants allegedly stopped payment on the plaintiffs'
bonus check, causing the plaintiffs to inspect the Base Lease, and
notice the allegedly improper notarization for the first time.
This argument misconstrues the discovery rule in West Virginia.
The rule is not a subjective one which allows for tolling until the
actual date of discovery, but is rather an objective standard,
which tolls the statute until such time as the plaintiffs either
did, or should have, by reasonable diligence discovered the right
of action.  Dunn v. Rockwell, 689 S.E.2d 255, 264-65.  Here, the
plaintiffs were provided with the documents for the Base Lease when
it was executed in 2006.  Inspection of that lease would have or
should have immediately revealed the allegedly improper
notarization, and would have or should have noticed the plaintiffs
to their right of action against the defendant Miller at that time.
Accordingly, with reasonable diligence, the plaintiffs would have
or should have discovered the alleged wrongdoing immediately upon
receiving the Base Lease, and the discovery rule does not work to
toll the statute of limitations in this case.

Finally, the plaintiffs argue that they have a right of action
against defendant Miller for notary misconduct under West Virginia
Code § 29C-6-101.  However, the plaintiffs' complaint does not
contain a claim for notary misconduct, nor have the plaintiffs
moved to amend the complaint to add such a claim.  Further, even if
the complaint did contain such a claim, it too would be barred by
the statute of limitations.  As explained above, the plaintiffs
would have or should have become aware of defendant Miller's

19

alleged misconduct through reasonable diligence in 2006.  The West
Virginia Supreme Court of Appeals has not ruled directly on the
statute of limitations for liability under West Virginia Code
§ 29C-6-101.  However, as described above, the damages alleged by
the plaintiffs here are to their future ability to lease and
conduct business with the leasehold property, a property interest
in West Virginia.  Thus, the applicable statute of limitations is
two years, under West Virginia Code § 55-2-12(b).

As a result of the foregoing, the defendants have successfully
sustained their burden of proof in establishing that defendant
Miller has been fraudulently joined to this action.  Accordingly,
in disregarding her residency, this Court finds that it possesses
subject matter jurisdiction over this action pursuant to 28 U.S.C.
§§ 1332 and 1441.  The plaintiffs' motion to remand this action to
the Circuit Court of Ohio County is denied.  As a further result of
the foregoing, the plaintiffs have failed to allege a cause of
action against defendant Miller.  Thus, her motion to dismiss
pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.

C.   Motion to Compel Arbitration

Defendants Chesapeake Appalachia, Nomac, and Bronco filed a
joint motion to compel arbitration and to dismiss.  This Court will
first address the motion to compel arbitration.  These defendants
assert that arbitration of this matter is required because both of
the relevant leases contain arbitration clauses which mandate
arbitration of all claims or controversies "concerning," "arising
out of," or "relating to" the leases.  (ECF No. 3 Ex. 1 *25 & *34)

They also argue that the FAA applies because the leases "evidenc[e]" transactions "involving commerce." 9 U.S.C. § 2. Finally, they maintain that the arbitration clauses are enforceable, and cover all of the claims raised in the plaintiffs' complaint.

The plaintiffs do not contest that there is a written agreement to arbitrate between themselves and Chesapeake Appalachia; nor do they argue that the relevant agreements are not subject to the FAA. Rather, the plaintiffs respond to this motion by arguing that the arbitration clauses of the Base and Top Leases are not enforceable because they were the result of unequal bargaining power between the parties, because the leases are adhesion contracts, and because the clauses are unconscionable. They also argue that their claims are not ripe for arbitration because they contest the validity of both of the leases containing the arbitration clauses, and that declaratory judgment actions are not subject to arbitration.

Initially, this Court finds that, pursuant to the test enumerated in Adkins, and described in detail above, the moving defendants have satisfied their burden of demonstrating that the FAA applies to the arbitration agreements at issue. See 303 F.3d at 500-501. This Court next holds that the claims brought by the plaintiffs are all "ripe" for arbitration, and are all covered under the terms of the arbitration clauses. Finally, this Court finds that the arbitration clauses are not unconscionable, and are enforceable despite any apparent unequal bargaining power between

21

the plaintiffs and defendant Range and defendant Chesapeake Appalachia, and despite the supposed adhesive nature of the leases.

The Fourth Circuit, as well as the United States Supreme Court, has repeatedly stated that, while arguments for the unconsionability or otherwise unenforcability of arbitration agreements themselves are rightly considered by district courts in opposition to motions to compel arbitration, claims regarding the enforceability of a contract as a whole are claims only to be raised before the arbitrator. Snowden v. CheckPoint Check Cashing, 290 F.3d 631, 636 (4th Cir. 2002) ("[I]f a party seeks to avoid arbitration . . . by challenging the validity or enforceability of an arbitration provision on any grounds that 'exist at law or in equity for the revocation of any contract,' 9 U.S.C. § 2, the grounds 'must relate specifically to the arbitration clause and not just to the contract as a whole.'") (quoting Hooters of Am., Inc. v. Phillips, 173 F.3d 933, 938 (4th Cir. 1999)); Sydnor v. Conseco Fin. Serv. Corp., 252 F.3d 302, 305 (4th Cir. 2001) (When "the dispute pertains to the formation of the entire contract, rather than the arbitration agreement," the issues of enforceability are "determined by the arbitrator."); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006) (reaffirming that, under the FAA, a challenge to the validity of a contract as a whole, not specifically to an arbitration clause contained therein, is to be determined in arbitration) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967)).

Accordingly, the plaintiffs' contentions that, because their complaint contests the validity of the leases, the claims are not "ripe" for arbitration are without merit.  The above-cited case law also renders meritless the plaintiffs' assertions that declaratory judgment actions are not subject to arbitration, as declaratory judgment actions quite often seek a determination of the validity of a contract and/or specific contractual provisions.  See also Schultz v. AT&T Wireless Servs., Inc., 376 F. Supp. 2d 685, 690 (N.D. W. Va. 2005); Miller v. Equifirst Corp., No. 2:00-0335, 2006 U.S. Dist. LEXIS 63816 (S.D. W. Va. Sept. 5, 2006) (both granting motions to compel arbitration in declaratory judgment actions).

Further, the arbitration clauses in each of the leases are both quite broad.  The language of the arbitration agreement in the Base Lease purports to cover "[a]ny controversy or claim arising out of or relating to this Lease, or the breach thereof." (ECF No. 3 Ex. 1 *25)  The Top Lease contains an agreement that "in the event of a disagreement between Lessor and Lessee concerning this Lease or the associated Order of Payment, performance thereunder, or damages caused by Lessee's operations, the resolution of all such disputes shall be determined in arbitration . . . ." (ECF No. 3 Ex. 1 *34)  Accordingly, because all of plaintiffs' claims clearly arise out of the defendants' alleged actions concerning one or the other of the leases, all of the plaintiffs' claims are covered by the arbitration agreements in both of the leases.

The plaintiffs have also failed to show that the arbitration agreements in the Base and Top Leases are unconscionable.  As the

23

plaintiffs concede, an arbitration clause is not rendered unconscionable simply because a contract is one of adhesion, or because the parties thereto are of unequal bargaining power. In West Virginia, in order for an arbitration clause to be unconscionable, the court must find unacceptable a combination of "the relative positions of the parties, the adequacy of the bargaining position," lack of "meaningful alternatives" in the formation of the challenged clause, and "the existence of unfair terms." Art's Flower Shop v. Chesapeake & Potomac Tel. Co., 186 W. Va. 613, syl. 4 (1992).

In support of their contention that the arbitration clauses are unconscionable, the plaintiffs assert that they are not sophisticated in the field of oil and gas rights, while defendants Chesapeake and Range are highly sophisticated. They state that they were not advised of their right to counsel, and that they relied upon the assurances of landmen and agents of Range, and that they also believe that a consultant was compensated by Range. They also claim that the leases presented to them by both of these defendants were in a "this or nothing" form. However, they do not support these conclusory statements with affidavits, or any other evidence whatsoever. Further, the moving defendants contend that the plaintiffs actually negotiated portions of the leases.

Finally, the only "unfair terms" noted by the plaintiffs exist in the Top Lease, and even in that lease, the plaintiffs largely

24

point to unfair terms outside of the arbitration clause itself.[5] The only term of the Top Lease's arbitration clause that the plaintiffs claim to be unfair is the mandate that "[a]rbitration shall be the exclusive remedy and cover all disputes[.]" However, there is no explanation as to why this term is unfair, and this Court is unable to determine the reason why it would be, as it applies to all parties to the agreement equally. There is no indication that arbitration is a more favorable vehicle for dispute resolution for one party than it is for the other, and the term binds all parties to arbitration. Accordingly, the plaintiffs have failed to show that the arbitration clause in either lease is unconscionable. For these reasons, Chesapeake Appalachia, LLC, Bronco and Nomac's[6] motion to compel arbitration is granted.

All of the above being said, this Court recognizes that defendants Range, Chesapeake Energy, and Chesapeake Operating, have

---

[5]As explained above, this Court cannot consider the unconscionability of the contract as a whole in considering a motion to compel arbitration, but can only consider the unconscionability of the arbitration clause itself.

[6]This Court notes that neither defendant Bronco nor defendant Nomac are parties to either of the leases. However, it is well established in the Fourth Circuit that non-parties to contracts can enforce arbitration agreements against parties to the same based upon "equitable estoppel." American Bankers Ins. Grp., Inc. v. Long, 453 F.3d 623, 627 (4th Cir. 2006). Equitable estoppel applies when "the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." Id. at n.3 (citing Brantley v. Republic Mortgage Ins. Co., 424 F.3d 392, 396 (4th Cir. 2005)). As this case falls squarely within this definition of equitable estoppel, Bronco and Nomac may enforce the arbitration clauses against the plaintiffs.

not moved to compel arbitration in this case, but have rather chosen to solely move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).   However, this Court believes it to be appropriate and necessary to require the claims against these defendants to be brought in arbitration as well.   The Fourth Circuit has not spoken on a district court's authority to <u>sua sponte</u> compel arbitration when neither party to an action so moves. However, the precedent of other circuits, coupled with the positions that the Fourth Circuit has taken on similar issues, support this Court's conclusion that, while not necessarily a favored action, such <u>sua sponte</u> action is permissible and appropriate in circumstances so warranting, which this Court finds here.

Under the FAA, arbitration clauses are considered waivable. 9 U.S.C. § 3.   Further, it has long been a settled matter that arbitration clauses are a form of a forum-selection clause, the enforcement of which is considered in the Fourth Circuit as a motion to dismiss for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3).   <u>See Potenciano Aggarao v. MOL Ship Mgmt. Co., Ltd.</u>, 675 F.3d 355, 365 n.9 (4th Cir. 2012) ("[T]he Supreme Court has characterized an arbitration clause as 'a specialized kind of forum selection clause.'") (quoting <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506, 519 (1974); <u>and</u> <u>Sucampo Pharm., Inc. v. Astellas Pharma, Inc.</u>, 471 F.3d 544, 549-50 (4th Cir. 2006) ("[A] motion to dismiss based on a forum-selection clause should be

26

properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue.").

As a result, a number of circuits have held that, as a general matter, because "venue is primarily a matter of convenience of litigants and witnesses," and because arbitration clauses are waivable, district courts should not "dismiss <u>sua sponte</u> either for improper venue or for failure to follow a forum selection clause." <u>Auto. Mechs. Local 701 Welfare and Pension Funds v. Vanguard Car Rental USA, Inc.</u>, 502 F.3d 740, 747 (2007); <u>see also</u> Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction</u> 3d § 3826 ("Because of the waiver principle and the personal nature of the defense, it generally (but not always) is thought inappropriate for the district court to dismiss an action on its own motion for improper venue."); <u>Janis v. Ashcroft</u>, 348 F.3d 491 (6th Cir. 2003); <u>Gomez v. USAA Federal Savings Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999).

However, as is noted in Wright, Miller & Cooper, while <u>sua sponte</u> dismissal based upon a forum selection clause is "generally" considered inappropriate, this is not always the case. The general concern in <u>sua sponte</u> enforcement of such clauses is that the party opposing such enforcement is not afforded the opportunity to brief the matter for the Court. See <u>Algodonera de las Cabezas, S. A. v. American Suisse Capital, Inc.</u>, 432 F.3d 1343, 1345-46 (11th Cir. 2005); <u>Moneygram Payment Systems, Inc. v. Consorcio Oriental, S.A.</u>, 65 Fed. App'x 844 (3d Cir. 2003)(unpublished). This concern does not factor into this case, because the plaintiffs have already

received a full opportunity to brief the issue of arbitrability in response to a motion to compel arbitration filed by other defendants.    Further, the Second Circuit has stated that, under "extraordinary circumstances," a district court may <u>sua sponte</u> "conclude that venue was improper." <u>Stich v. Rehnquist</u>, 982 F.2d 88.   This, coupled with the strong federal preference for enforcement of arbitration clauses, leads this Court to the conclusion that it is necessary to find extraordinary circumstances in this case, and send the remaining claims against all of the remaining defendants to arbitration.

Such extraordinary circumstances are found because this Court believes that the claims brought against each of the defendants who have not moved for arbitration are inexorably intertwined with and dependent upon the claims brought against the defendants who have moved to compel arbitration.   Accordingly, the interests of efficiency, avoidance of possible conflicting judgments and obligations, and the high possibility of the inability to reach a full and complete result in arbitration should all defendants not participate in those proceedings, mandate that all claims against all defendants be litigated together.   This Court thus finds that all of the plaintiffs' claims against all defendants except for defendant Miller, who was previously dismissed, must be dismissed to be raised in arbitration.

## V.   <u>Conclusion</u>

For the reasons stated above, the plaintiffs' motion to strike and dismiss notice of removal and remand (ECF No. 18) and

28

plaintiffs' motion to remand (ECF No. 19) are DENIED.  Defendant
Brenda Ann Miller's motion to dismiss (ECF No. 28) is GRANTED.
Defendants Chesapeake Appalachia, LLC, Bronco Drilling, LLC, and
Nomac Drilling LLC's motion to compel arbitration and to dismiss
(ECF No. 13) is GRANTED inasmuch as it moves to compel arbitration,
and DENIED AS MOOT inasmuch as it moves for dismissal pursuant to
Fed. R. Civ. P. 12(b)(6).  Defendant Range Resources-Appalachia,
LLC's motion to dismiss (ECF No. 8), as well as plaintiffs' motion
for leave to file surreply to defendant Range's motion to dismiss
(ECF No. 20) are DENIED AS MOOT.  Defendants Chesapeake Energy
Corp. and Chesapeake Operating, Inc.'s motion to dismiss (ECF No.
15) is DENIED AS MOOT.  Defendant Brenda Ann Miller is DISMISSED
from this action WITH PREJUDICE.  This civil action is DISMISSED to
be brought in arbitration in accordance with this memorandum
opinion and order.  The Clerk is DIRECTED to dismiss this civil
action and strike it from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to
counsel of record herein.

DATED:   August 23, 2012


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE


29